HONIGMAN LLP
MATTHEW S. DISBROW
(SBN 294764)
2290 First National Building
Detroit, Michigan 48226
Telephone:    313-465-7372
Facsimile:    313-465-7373
mdisbrow@honigman.com

Attorneys for Defendants
TRISTRUX LLC
and LEONE ELECTRIC CO. LLC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| WALTER CRUZ and ANTONIO ANGELO LARRANAGA, individuals, on behalf of themselves, and on behalf of all person similarly situated,<br><br>        Plaintiffs,<br><br>        vs.<br><br>TRISTRUX LLC, a Delaware limited liability company; LEONE ELECTRIC CO. LLC, a Delaware limited liability company; and DOES 1-50, inclusive.<br><br>        Defendants. | Case No. _____<br><br>**DEFENDANTS' NOTICE OF REMOVAL BASED ON DIVERSITY JURISDICTION**<br><br>First Amended Complaint Filed: January 16, 2024<br><br>Removal Date: |

**TO THE CLERK OF THE COURT:**

**PLEASE TAKE NOTICE** that Defendants TriStruX LLC ("TriStruX") and Leone Electric Company LLC ("LEC"), through their undersigned counsel, and pursuant to 28 U.S.C. §§ 1332(d), 1441, and 1446, respectfully submit this Notice of Removal in the above-captioned action from the Superior Court of California, County of Alameda, No. 23CV047527, to the United States District Court for the Northern District of California, Oakland Division.  In support of this removal, Defendants state as follows:

## I.      THE REMOVED CASE

1.      The removed case is a civil action commenced in the Superior Court of California, County of Alameda, by Plaintiffs Walter Cruz and Antonio Larranaga ("Plaintiffs") against TriStruX and LEC, Case No. 23CV047527 (the "State Action").

## II.     THE PARTIES

2.      Plaintiffs alleges they are former employees of Defendants and residents of the State of California.

3.      TriStruX is a limited liability company, formed under the laws of Delaware, with its principal office located in Wayne, New Jersey.   (Exhibit A, Declaration of Matthew S. Disbrow, Exhibit 1, Complaint, ¶ 2; Exhibit B, Declaration of Cathy Potter, ¶ 4).

4.      LEC is a limited liability company, formed under the laws of Delaware, with its principal office located in Wayne, New Jersey.   (Exhibit A, Declaration of Matthew S. Disbrow, Exhibit 1, Complaint, ¶ 3; Exhibit B, Declaration of Cathy Potter, ¶ 5).

## III.    PROCEDURAL BACKGROUND

5.      On October 16, 2023, Plaintiff Walter Cruz filed his Complaint against Defendants in the State Action (the "Complaint").   A true and correct copy of the Complaint is attached as Exhibit 1 to the Declaration of Matthew S. Disbrow.

6.      On January 16, 2024, Plaintiffs filed their First Amended Complaint, adding Plaintiff Antonio Larranaga as a named plaintiff (the "FAC").   A true and correct copy of the FAC is attached as Exhibit 2 to the Declaration of Matthew S. Disbrow.

7.      Defendants accepted service of the First Amended Complaint on February 7, 2024. (*See* Disbrow Decl., Ex's. 3, 4).

8.      No other pleadings have been entered in the State Court Action.   True and correct copies of all other orders in the State Court Action are attached as Exhibit 4 to the Declaration of Matthew S. Disbrow.

9.      The FAC alleges nine causes of actions against Defendants for purported wage and hour law violations under the California Labor Code and Business and Professions Code. (*See* FAC ¶¶ 17-136).

2

**DEFENDANTS' NOTICE OF REMOVAL BASED ON
DIVERSITY JURISDICTION**

51140267.4

10.    Plaintiffs seek to represent a putative class of all non-exempt employees of Defendants in California from January 16, 2020 to the present (the "California Class").  (FAC ¶ 7).

11.    At least one of the Defendants have employed approximately 276 non-exempt employees in California over the past four years.  (Ex. B, Potter Decl. ¶ 14).

12.    Plaintiffs do not allege any specific amount of relief sought.

13.    Defendants deny Plaintiffs' claims.  Furthermore, given the varied nature of non-exempt employee work duties, locations, and applicable policies and practices of Defendants, the class Plaintiffs seek to represent can never be certified.  Nonetheless, taking the allegations as they are asserted in the FAC, which Defendants must do for purposes of removal, Plaintiffs' allegations, coupled with the citizenship of the parties and the amount in controversy, demonstrate that there is sufficient diversity of citizenship of the parties for purposes of 28 U.S.C. § 1332(d) and that more than $5,000,000 is in controversy in this case.  Therefore, the Court possesses subject matter jurisdiction over Plaintiffs' state law claims and the case is properly removed to this Court.

IV.    **JURISDICTION – DIVERSITY OF CITIZENSHIP UNDER THE CLASS ACTION FAIRNESS ACT**

14.    This action is removable pursuant to the Class Action Fairness Act ("CAFA").  CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law where (1) the amount in controversy exceeds five million dollars, (2) any plaintiff class member is a citizen of a state different from any defendant, (3) the primary defendants are not states, state officials, or other government entities against whom the district court may be foreclosed from ordering relief, and (4) the number of plaintiffs in the class is at least 100 persons.  28 U.S.C. §§ 1332(d)(2), (d)(5).

15.    For purposes of diversity, a natural person is a citizen of the state where he or she is domiciled, or resides with an intent to remain indefinitely.  *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597 (1989).  A limited liability company is a citizen of each state where each of its members is a citizen.  *See Americold Realty Trust v. ConAgra Foods, Inc.*,

51140267.4

1   136 S. Ct. 1012, 1016-17 (2016); *Lindley Contours, LLC v. AABB Fitness Holdings, Inc.*, 414 F.

2   App'x 62, 64 (9th Cir. 2011).  A corporation is a citizen of its state of incorporation and of the

3   state where its principal place of business (*i.e.*, its "nerve center") is located. *See* 28 U.S.C. §

4   1332(c)(1); *Hertz Corp. v. Friend,* 559 U.S. 77, 80–81, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010).

5        16.    CAFA is satisfied so long as any member of the class is a citizen of a different state

6   than any defendant.  *Bush v. Cheaptickets, Inc*., 425 F.3d 683, 684 (9th Cir. 2005).

7        17.    By definition, one or more of members of the California Class are citizens of

8   California.  The FAC alleges that Plaintiffs are California residents.  (FAC ¶¶ 5, 6).  Upon

9   information and belief, Plaintiffs have not relocated from the State of California, and (based on

10   their continued, indefinite residence in California during the alleged limitations period when they

11   were employees of Defendants) intend to continue to reside in California.  The California Class is

12   further defined as non-exempt employees of Defendants in California.  (*Id*. ¶ 7).

13        18.    Conversely, LEC is a Delaware limited liability company, whose sole member is

14   TriStruX.  (Ex. B, Potter Decl. ¶ 6).

15        19.    TriStruX is a Delaware limited liability company, whose sole member is TriStruX

16   Holdings LLC.  (Ex. B, Potter Decl. ¶ 7).

17        20.    TriStruX Holdings LLC is a Delaware limited liability company, whose members

18   are (i) TriStruX Blocker Inc., a Delaware corporation with its primary place of business in New

19   Jersey; (ii) TEG HC, Inc., a Delaware corporation with its primary place of business in New

20   Jersey; (iii) LEC HC, Inc., a Delaware corporation with its primary place of business in New

21   Jersey; (iv) Thorn Oaks Holdings, LLC, an Illinois limited liability company; (v) TriStruX

22   Management Holdings LLC, a Delaware limited liability company; (vi) Hess Holdco, Inc., a

23   Pennsylvania corporation with its principal place of business in Pennsylvania; and (vii) DSCP

24   Strategic Partners Fund, LLC, a Delaware limited liability company.  (Ex. B, Potter Decl. ¶ 8).

25        21.    Thorn Oaks Holdings, LLC is an Illinois limited liability company whose sole

26   member is a natural person who is a citizen of Illinois and not California.  (Ex. B, Potter Decl. ¶

27   9).

28

**DEFENDANTS' NOTICE OF REMOVAL BASED ON
DIVERSITY JURISDICTION**

51140267.4

22.    TriStruX Management Holdings LLC is a Delaware limited liability company, each of whose members are natural persons who are citizens of New Jersey, New York, North Carolina, or Illinois.  (Ex. B, Potter Decl. ¶ 10).

23.    DSCP Strategic Partners Fund, LLC is a Delaware limited liability company, each of whose members are natural persons who are citizens of Pennsylvania or Delaware.  (Ex. B, Potter Decl. ¶ 11).

24.    Accordingly, Plaintiffs are citizens of California, while TriStruX and LEC are citizens of Delaware, New Jersey, Pennsylvania, New York, Illinois, and North Carolina.

25.    Thus, diversity of citizenship is satisfied.

26.    Plaintiffs have placed more than $5.0 million in controversy, even adopting conservative interpretations of the claims alleged in the Complaint.  For purposes of CAFA jurisdiction, the Court considers the aggregate relief sought by the class, not the claims of the lead plaintiff or any individual class member standing alone.  28 U.S.C. § 1332(d)(6).

27.    "Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy has been met."  *Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 683 (9th Cir. 2006).  At the removal stage, however, Defendants need file only a notice "containing a short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).  The Supreme Court in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014), recognized that "as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  Only if the Plaintiff seeks remand or the Court questions the allegations of the notice of removal is supporting evidence required.  *Id.*  Otherwise "the defendant's amount-in-controversy allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court jurisdiction.  *Id.* at 553.

28.    In assessing the amount in controversy, a removing defendant is permitted to rely on "a chain of reasoning that includes assumptions."  *Arias v. Residence Inn by Marriott*, 936 F.3d

**DEFENDANTS' NOTICE OF REMOVAL BASED ON
DIVERSITY JURISDICTION**

51140267.4

1    920, 925 (9th Cir. 2019). "An assumption may be reasonable if it is founded on the allegations of

2    the complaint." *Id.*

3        29.    "'The amount in controversy is simply an estimate of the total amount in dispute,

4    not a prospective assessment of defendant's liability.'" *Id.,* (quoting *Lewis v. Verizon Commc'ns,*

5    *Inc.*, 627 F.3d 395, 400 (9th Cir. 2010)). "In that sense, the amount in controversy reflects

6    the *maximum* recovery the plaintiff could reasonably recover." *Id.* (emphasis in original).

7        30.    Even when defendants have persuaded a court upon a CAFA removal that the

8    amount in controversy exceeds $5 million, they are still free to challenge the actual amount of

9    damages in subsequent proceedings and at trial. *Ibarra v. Manheim Investments, Inc.,* 775 F.3d

10   1193, 1200, n.1 (9th Cir. 2015). "This is so because they are not stipulating to damages suffered,

11   but only estimating the damages that are in controversy. *Id.* Here, Defendants deny the validity

12   and merit of the entirety of Plaintiffs' claims, but for purposes of removal only, and without

13   conceding that Plaintiffs or the California Class are entitled to any damages or penalties,

14   Plaintiffs' allegations clearly place a sufficient amount in controversy, as explained below.

15       31.    As a threshold matter, Plaintiffs allege that Defendants "systematically" violated

16   the Labor Code in their alleged failure to pay minimum wages, pay overtime premiums, provide

17   meal and rest breaks, reimburse business expenses, provide accurate wage statements, and pay all

18   wages due upon separation from employment.  (FAC ¶¶ 17, 21, 48, 85, 100).  Plaintiffs further

19   allege that Defendants had "uniform policies and practices" that violated state law as alleged in the

20   FAC, including as to alleged failure to pay minimum wages, pay overtime premiums, provide

21   meal and rest breaks, reimburse business expenses, provide accurate wage statements, and pay all

22   wages due upon separation from employment.  (FAC ¶¶ 13, 17).  Such allegations, of systematic

23   violations and policies and practices underlying violations, support the conclusion that Plaintiffs

24   are claiming that Defendants engaged in each of the alleged violations on a routine basis as to each

25   Class Member. *Cavada v. Inter-Cont'l Hotels Grp.*, 2019 WL 5677846, at *4-6 (S.D. Cal. Nov. 1,

26   2019).

27

28

**DEFENDANTS' NOTICE OF REMOVAL BASED ON**
**DIVERSITY JURISDICTION**

51140267.4

1

**Plaintiffs' Minimum Wage Claims**

2       32.     In Plaintiffs' second cause of action, Plaintiffs allege Defendants failed to pay them

3   and the alleged Class Members "the correct minimum wages for their time worked."  (FAC ¶ 85).

4       33.     Plaintiffs allege that they are entitled to "recovery of all unpaid wages, according to

5   proof, interest, statutory costs, as well as the assessment of any statutory penalties."  (FAC ¶ 87).

6       34.     While Plaintiffs allege that Defendants failed to pay for "all earned compensation,"

7   Defendants will conservatively calculate a minimum of one hour of unpaid minimum wages per

8   week for each putative class member.  (FAC ¶ 84).

9       35.     Plaintiffs allege a proposed class of California citizens currently or formerly

10  employed by Defendants as non-exempt employees in the state of California at any time between

11  January 16, 2020 and the date the class is certified.  From January 16, 2020 to the present, there

12  were approximately 276 employees who were compensated on an hourly basis, classified as

13  overtime-eligible, and who were paid wages by at least one of the Defendants ("Qualifying

14  Employees"). (Ex. B, Potter Decl. ¶ 14).

15      36.     Defendants will conservatively calculate the amount in controversy using a three-

16  year limitations period between January 16, 2021 and January 16, 2024, the date the FAC was

17  filed.

18      37.     There are approximately 245 employees in this period who worked a total of

19  12,797 workweeks during this period.  (Ex. B, Potter Decl. ¶ 15). The foregoing workweek

20  calculations exclude periods during employment when an individual employee was on a family

21  and medical leave or workers' compensation leave of absence.  (*Id.* ¶ 18).

22      38.     Applying the lowest minimum wage rate in effect between January 16, 2020 and

23  January 16, 2024 would be $13.00 per hour.  If one hour of unpaid minimum wages were assumed

24  per workweek during the three-year period between January 16, 2021 and January 16, 2024, that

25  would total $166,361.00 ($13.00 multiplied by 12,797 workweeks).  (*Id.* ¶ 31).

26      39.     Assuming for purposes of this removal analysis only that Plaintiffs' allegations

27  were true, Plaintiffs would also be entitled to penalties for the non-payment of minimum wages,

28  with a one-year statute of limitations.  Cal. Lab. Code § 1197.1.  Plaintiffs allege that California

7

**DEFENDANTS' NOTICE OF REMOVAL BASED ON
DIVERSITY JURISDICTION**

1  Labor Code § 1197.1 is at issue under the heading of Count Two of the FAC, which asserts

2  Plaintiffs' minimum wage claims. (FAC, pp. 1, 20).  Plaintiffs also assert Defendants are subject

3  to "civil penalties for each underpaid employee" and cite California Labor Code § 1197.1 as the

4  basis for that claim.  (FAC ¶ 11).

5      40.    During the one-year period between January 16, 2023 and January 16, 2024,

6  Defendants employed 146 Qualifying Employees who worked a total of 5,081 workweeks during

7  such period.  (*Id.* ¶ 17).

8      41.    To calculate alleged penalties due to non-payment of minimum wages, Defendants

9  apply an initial penalty rate of $100 to the first workweek for each of the 146 Qualifying

10  Employees during the one year period between January 16, 2023 and January 16, 2024, which

11  yielded a total of $14,600 ($100 multiplied by 146 workweeks).  Defendants then applied a rate of

12  $250 to each workweek for the balance of the period, for a total of $1,233,750.00 ($250 multiplied

13  by 4,935 workweeks).  (*Id.* ¶ 33).

14                        **Plaintiffs' Overtime Claims**

15      42.    In Plaintiffs' third cause of action, they allege Defendants failed to pay overtime.

16  Specifically, Plaintiffs allege that Defendants failed to pay Class Members "for all overtime

17  worked, including work performed in excess of eight (8) hours in a workday, and/or twelve (12)

18  hours in a workday, and/or forty (40) hours in any workweek."  (FAC ¶ 89).  Plaintiffs allege that

19  the Plaintiffs and the California Class "forfeited minimum wage and overtime compensation by

20  regularly working without their time being accurately recorded and without compensation at the

21  applicable minimum wage and overtime rates. DEFENDANT's uniform policy and practice not to

22  pay PLAINTIFFS and other CALIFORNIA CLASS Members for all time worked is evidenced by

23  DEFENDANT's business records."  (FAC ¶ 18).  Plaintiffs further allege that they and the

24  California Class have "uniformly been deprived of wages and penalties from unpaid wages earned

25  and due, including but not limited to unpaid minimum wages [and] unpaid overtime

26  compensation. . . " (FAC ¶ 47).  They also allege that Defendants had "a uniform policy and

27  practice that failed to accurately record overtime worked by" Plaintiffs and the Class Members.

28  (FAC ¶ 94).

**DEFENDANTS' NOTICE OF REMOVAL BASED ON
DIVERSITY JURISDICTION**

51140267.4

43.     Plaintiffs allege, pursuant to Cal. Labor Code § 1194, Plaintiffs and Class Members are entitled to recover their unpaid overtime compensation.  (FAC ¶ 99).

44.     Defendants will conservatively calculate the amount in controversy using a three-year limitations period.

45.     There are approximately 245 employees in this period who worked a total of 12,797 workweeks during this period.  (Ex. B, Potter Decl. ¶ 15).

46.     In reasonably calculating alleged overtime wages, Defendants will assume two hours of unpaid overtime for work in excess of 8 hours in a day or in 40 hours in a week, per week, per Qualifying Employee.

47.     To calculate the value of unpaid overtime if two hours of overtime were worked but not recorded by each Qualifying Employee during each workweek, Defendants took the actual wage rate in effect for each Qualifying Employee, multiplied that number by 1.5, multiplied resulting number by 2, and then multiplied by the number of workweeks at that wage rate for that Qualifying Employee during the period January 16, 2021 to January 16, 2024.  For the three year period January 16, 2021 to January 16, 2024, that yielded a total of $1,122,920.66.  (*Id.* ¶ 34).

48.     If only one hour on unrecorded overtime were worked per week, the result would be $561,460.33.  (*Id.*)

49.     Using averages instead of individual wage rates, the average initial base hourly wage rate (excluding subsequent rate increases) for the Qualifying Employees would be $27.55, which yields an overtime rate of $41.32.  Multiplying that overtime rate times two hours per workweek times 12,797 workweeks results in a total of $1,057,672.  If only one hour of unrecorded overtime was worked per workweek, the result would be $528,836.  (*Id.* ¶ 36).

**Plaintiffs' Meal Period Claims**

50.     In Plaintiffs' fourth cause of action, Plaintiffs allege they and Class Members "often" did not receive compliant meal periods for working more than five (5) and ten (10) hours per day because their meal periods were missed, late, short, interrupted, and/or they were not permitted to take a second meal period.  (FAC ¶ 105).

**DEFENDANTS' NOTICE OF REMOVAL BASED ON
DIVERSITY JURISDICTION**

51140267.4

51.    Based on the time records, during calendar years 2022 and 2023, Qualifying Employees recorded an average of 7.62 hours of non-overtime worktime per day.  The foregoing excludes overtime hours that were recorded and any periods of time recorded as paid or unpaid leave.  Based on this average length of non-overtime work hours on each day worked, Defendants reasonably assumed each employee to take or be entitled to take, on average, two rest periods and one meal period per day. (Potter Decl. ¶ 23).

52.    Plaintiffs allege that, pursuant to Labor Code § 226.7(b) and the applicable IWC Wage Order, Defendants are required to pay an employee one (1) additional hour of pay at the employee's regular rate of compensation for each work day that a compliant meal period is not provided.  (FAC ¶ 106).  Plaintiffs allege Defendants "as a matter of company policy, practice, and procedure, intentionally, knowingly, and systematically failed to provide legally compliant meal and rest periods," that failing to provide compliant meal periods was a "strict corporate policy and practice," and that failing to provide required meal periods was a "uniform policy and practice" of Defendants.  (FAC ¶ 17, 45, 64).

53.    Based on these allegations, it is reasonable to assume and calculate a 40 percent violation rate, or two missed or non-compliant meal periods for each week.  Members of the California Class would therefore be awarded to two hours of pay for missed or non-compliant meal periods each week.

54.    To calculate premium payments owed due to missed, late or interrupted meal periods, Defendants took the hourly rate of pay in effect for each Qualifying Employee during the period between January 16, 2021 and January 16, 2024, and determined the number of workweeks each Qualifying Employee worked at their individual regular wage rate.  (*Id.* ¶ 26).

55.    If each Qualifying Employee was awarded two hours of their base hourly rate per workweek during the three year period, the total based on individual wage rates in effect over time would be $748,669.78.  (*Id.* ¶ 27).

56.    If each Qualifying Employee was awarded one hour of their base hourly rate per workweek during the three year period, the total based on individual wage rates in effect over time would be $374,334.89.  (*Id.* ¶ 28).

**DEFENDANTS' NOTICE OF REMOVAL BASED ON**
**DIVERSITY JURISDICTION**

51140267.4

57.    During the relevant three-year period, the average base wage for Qualifying Employees who worked during that period, using only their initial wage rate and excluding any wage rate increases during the three-year period, was $27.55 per hour.  Using that wage rate multiple by two hours multiplied by the 12,797 workweeks yields a total of $705,114.70.  If one hour per workweek is used instead of two, the total is $352,557.35.  (*Id.* ¶ 29).

### Plaintiffs' Rest Period Claims

58.    For Plaintiffs' fifth cause of action, Plaintiffs allege that "as a result of their rigorous work schedules" they were "required to work in excess of four (4) hours without being provided ten (10) minute rest periods and were not provided with one-hour wages in lieu thereof. (FAC ¶ 109).  Plaintiffs allege Defendants "as a matter of company policy, practice, and procedure, intentionally, knowingly, and systematically failed to provide legally compliant meal and rest periods," and had a "uniform policy and practice" of failing to provide compliant rest periods  (FAC ¶¶ 17, 64).

59.    Based on these allegations, it is reasonable to assume and calculate a 40 percent violation rate, or two missed compliant rest periods for each week.  Plaintiffs would therefore be entitled to two hours of pay for missed compliant rest periods each week.

60.    To calculate premium pay due to missed, late or interrupted rest breaks, Defendants followed the same methodology as above with respect to meal periods.  The total using actual wage rates if two hours of rest break premiums were awarded per workweek are $748,669.78, and if one hour were awarded per workweek it would be $374,334.89.  If the average initial wage rate of 27.55 per hour were used, the totals would be $705,114.70 (two hours per week) and $352,557.35 (one hour per week). (*Id.* ¶ 30).

### Plaintiffs' Unreimbursed Business Expenses Claim

61.    Plaintiffs' sixth cause of action is failure to reimburse business expenses under Cal. Labor Code § 2802.  Plaintiffs allege that they and other Class Members incurred required expenses in the discharge of their job duties that were not reimbursed by Defendants, including, but not limited to, use of personal cell phones and computers.  (FAC ¶ 114).

**DEFENDANTS' NOTICE OF REMOVAL BASED ON
DIVERSITY JURISDICTION**

51140267.4

62.    While Plaintiffs provide no range of the amount at issue for failure to reimburse, it is clear that some payment for business expense was made.  Accordingly, in reasonably calculating alleged business expenses, Defendants multiplied a $15/week phone bill[1] by 12,797 workweeks worked by Qualifying Employees in the three-year statutory period, resulting in $191,955.

**Plaintiffs' Inaccurate Wage Statement Claims**

63.    Plaintiffs' seventh cause of action is failure to provide accurate itemized wage statements.  Plaintiffs allege that Defendants knowingly and intentionally failed to comply with Labor Code § 226(a) on wage statements that were provided to Plaintiff and Class Members. (FAC ¶ 117).  Plaintiffs claim the deficiencies included, among other things, the failure to correctly state the gross and net wages earned, total hours worked, all applicable hourly rates in effect, and the number of hours worked at each hourly rate by Plaintiffs and Class Members.  (*Id.*)

64.    Under Labor Code § 226(a), based on this violation, Plaintiffs and Class Members are entitled to recover from Defendants the greater of all actual damages caused by Defendants or fifty dollars ($50.00) for the initial pay period in which a violation occurred and one hundred dollars ($100.00) per employee for each violation in subsequent pay periods in an amount not exceeding four thousand dollars ($4,000.00) per employee.  (FAC ¶ 120).

65.    Qualifying Employees are paid on a weekly basis, such that for each workweek there is a corresponding wage statement.  The wage statements provided to non-exempt employees during the period of January 16, 2020 to the present have not substantially varied as to their form or contents in terms of categories of information provided on the wage statement.  (Ex. B, Potter Decl. ¶ 19).

66.    During the one-year period between January 16, 2023 and January 16, 2024, there were total of 5,854 workweeks where 146 Qualifying Employees performed work, with each

---

[1] The $15 weekly phone bill is a conservative underestimate in light of the fact that the typical monthly cell phone bill in the U.S. is $119 or $27.46/week. *New Report Reveals Mobile Phone Bills on the Rise as Consumers Spend $1,342 Per Year, up 5% From Last* Year, https://finance.yahoo.com/news/report-reveals-mobile-phone-bills-172000838.html (last visited February 16, 2024).

**DEFENDANTS' NOTICE OF REMOVAL BASED ON
DIVERSITY JURISDICTION**

workweek generating a wage statement.  Assigning a value of $50 to the first wage statement issued to each Qualifying Employee and a value of $100 to each subsequent wage statement, up to a maximum amount of $4,000 per Qualifying Employee, yields a total of $429,150.00.  (*Id.* ¶ 20).

**Plaintiffs' Statutory Waiting Time Penalties**

67.     Plaintiffs' eighth cause of action is for statutory waiting time penalties under Cal .Labor Code § 203.  (FAC ¶ 128).  Plaintiffs allege that they and "all employees who terminated employment during the class period" were not paid all wages due at termination.

68.     Plaintiff seeks the statutory penalty of up to thirty (30) days of pay for each of these employees.  (FAC ¶ 128).

69.     During the three-year period between January 16, 2021 and January 16, 2024, a total of 156 Qualifying Employees experienced a termination of employment (the "Former Employees").  All of the Former Employees' employment terminated 30 days or more prior to January 16, 2024.  (Ex. B, Potter Decl. ¶ 21).

70.     Based on the recorded work hours records, during calendar year 2023 Qualifying Employees recorded an average of 7.65 hours of non-overtime work time per day when working time was recorded in the timekeeping system.  The foregoing excludes any periods of time recorded as paid or unpaid leave.  (*Id.* ¶ 22).

71.     Based on the recorded work hours records, during calendar years 2022 and 2023, Qualifying Employees recorded an average of 7.62 hours of non-overtime work time per day when working time was recorded.  The foregoing excludes overtime hours that were recorded and any periods of time recorded as paid or unpaid leave.  Based on this average length of non-overtime work hours on each day worked, Defendants reasonably assumed each employee to take on average two rest periods and one meal period per day. (*Id.* ¶ 23).

72.     For the Former Employees, Defendants determined the potential waiting time penalties by taking each Former Employee's wage rate in effect at the time of termination of employment, multiplying that hourly rate by 8 hours to calculate a daily rate of pay for days when work was performed, and multiplying that amount by 30 days.  Applying that calculation to the 156 Former Employees yields a total amount of $1,056,624.00. (*Id.* ¶ 24).

13

**DEFENDANTS' NOTICE OF REMOVAL BASED ON
DIVERSITY JURISDICTION**

73.    The average hourly rate for the Former Employees in effect at the time of termination of employment was $28.22.  Using an average rate rather than individual figures yields a total of $1,056,556.80.  (*Id.* ¶ 25).

74.    This calculation, which applies the maximum penalty for each former employee, is appropriate because Plaintiffs have alleged that all Class Members have sustained some form of lost wages that would trigger waiting time penalties.  *See, e.g., Ford v. CEC Entm't, Inc.*, No. CV 14-01420 RS, 2014 WL 3377990 (N.D. Cal. July 10, 2014) ("Assuming a 100% violation rate is thus reasonably grounded in the complaint" when no averment in the complaint supported an inference that sums were ever paid and holding that the plaintiff could not "now claim class members may be awarded less than the statutory maximum.").

**Plaintiffs' Request for Attorneys' Fees**

75.    Plaintiffs are further seeking an award of attorneys' fees on their claims under the Labor Code.  (FAC, Prayer for Relief ¶ 4).  Attorneys' fees awarded under fee-shifting statutes are included in the amount in controversy.  *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018).  In assessing whether the amount in controversy is met, a court not only assesses the amount of attorney fees incurred up to the date of removal but also future fees.  *Id.*  In other words, the amount in controversy at the time of removal "must include all relief to which a plaintiff is entitled if the action succeeds."  *Id.*

76.    The Court has discretion to award attorneys' fees in a class action settlement by applying either the percentage-of-the-fund method or the lodestar method.  *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002).  Consistent with this approach, courts have previously added 25 percent of the demonstrated damages to the amount in controversy as attorneys' fees.  *See, e.g., Hamilton v. Wal-Mart Stores, Inc.*, Case No. ED CV 17–01415–AB (KKx), 2017 WL 4355903, at *5–6 (C.D. Cal. Sept. 29, 2017) (CAFA wage and hour case allowing an estimated attorneys' fee award of 25% of plaintiff's damages in calculating the amount in controversy); *Sanchez v. Russel Sigler Inc.*, 2015 WL 12765359, at *7 (C.D. Cal. Apr. 28, 2015) (CAFA action finding that "the benchmark for attorneys' fees is 25% of the amount in controversy."); *Gutierrez v. Stericycle, Inc.*, Case No. LA CV15-08187 JAK (JEMx), 2017 WL

**DEFENDANTS' NOTICE OF REMOVAL BASED ON
DIVERSITY JURISDICTION**

51140267.4

599412, at *17 (C.D. Cal. Feb. 14, 2017) (CAFA wage and hour case noting that "it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims."). Using such a method here, the attorneys' fees for removal purposes can be plausibly estimated at $880,514 or more (20 percent of the lower end of the reasonable spectrum of damages for claims alleged in the FAC).

77.     Fee awards in similar cases may also establish the attorneys' fees in controversy for jurisdiction. *See Brady v. Mercedes-Benz USA, Inc.,* 243 F. Supp. 2d 1004, 1011 (N.D. Cal. 2002). The court in *Hightower v. JP Morgan Chase Bank, N.A.,* 2015 WL 9664959, at *11-12 (C.D. Cal. 2015) awarded $3.6 million in attorney's fees to the plaintiffs in a wage and hour class action. *See also e.g., Wren v. RGIS Inventory Specialists,* 2011 WL 1230826, at *83 (N.D. Cal. 2011) (awarding $6.75 million in attorney's fees in a wage and hour class action to the plaintiff); *Ruiz v. XPO Last Mile, Inc.,* 2017 WL 6513962, at *7 (S.D. Cal. 2017) (awarding $4,865,000 in fees in a wage and hour class action involving independent contractor misclassification, which represented 35% of the recovery for the class.)

78.     Taking into account the foregoing claims and calculations, more than $5,000,000 is in controversy in this case.

79.     More specifically, Plaintiffs have alleged damages that can be estimated as follows:

**DEFENDANTS' NOTICE OF REMOVAL BASED ON DIVERSITY JURISDICTION**

51140267.4

| Claims | Amount in Controversy |
|---|---|
| Minimum Wage – Unpaid Time (1 Hour) | $166,361.00 |
| Minimum Wage – § 1197.1 Penalties | $1,248,350. |
| Overtime Wages – 2 Hours / 1 Hour | $1,122,920.66 / $561,460.33 |
| Meal Period Premiums – 2 Hours / 1 Hour | $748,669.78 / $374,334.89 |
| Rest Period Premiums – 2 Hours / 1 Hour | $748,669.78 / $374,334.89 |
| Unreimbursed Business Expenses | $191,955.00 |
| Waiting Time Penalties | $1,056,624.00 |
| Wage Statement Penalties | $429,150 |
| Total Before Attorneys' Fees<br><br>Reasonable / More Conservative | <br><br>$5,712,700.21 / $4,402,570.11 |
| Attorneys' Fees<br><br>Reasonable – 25% / 20%<br><br>More Conservative – 25% / 20% | <br><br>$1,428,175 / $1,142,540<br><br>$1,100,642.53 / $880,514 |
| **Total**<br><br>**More Conservative – 20% Attorneys' Fees**<br><br>**Reasonable – 20% Attorneys' Fees**<br><br>**More Conservative – 25% Attorneys' Fees**<br><br>**Reasonable – 25% Attorneys' Fees** | <br><br>**$5,283,084.11**<br><br>**$6,855,240.21**<br><br>**$5,503,212.64**<br><br>**$7,140,875** |

80.    In sum, whether using reasonable calculations authorized by the Ninth Circuit or more conservative calculations, more than $5,000,000 is in controversy in this case. *See Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 996 (9th Cir. 2022).

## V.    TIMELINESS OF REMOVAL

81.    This Notice of Removal is timely because it was filed within 30 days after Defendants received service of Plaintiff's FAC on February 7, 2024.  28 U.S.C. § 1446(b)(1).

82.    Further, Defendants will file a true and correct copy of this Notice of Removal with the Clerk in the Superior Court of the State of California, County of Alameda, and will serve all

16

**DEFENDANTS' NOTICE OF REMOVAL BASED ON DIVERSITY JURISDICTION**

adverse parties with written notice thereof, promptly after filing the Notice of Removal with this Court. 28 U.S.C. § 1446(d).

**VI.** **CONSENT OF ALL DEFENDANTS**

83.    As set forth in the Declaration of Matthew Disbrow, removal of this case is otherwise proper because all Defendants that have been joined and served. Specifically, TriStruX and LEC, have consented to the removal of this case from the Superior Court of the State of California, County of Alameda, to the United States District Court for the Northern District of California. (Ex. A, Disbrow Decl. ¶ 7).

84.    Consent is not required for the unnamed defendants "Does 1-50." Only defendants who have been joined and served must consent to removal under 28 U.S.C. § 1441(a). *See* 28 U.S.C. § 1446(a)(2)(A).

**VII.** **VENUE**

85.    Venue lies in the United States District Court for the Northern District of California because the state court action was filed and is pending in the Superior Court of the State of California, County of Alameda, which is within this judicial district.

**VIII.** **INTRADISTRICT ASSIGNMENT**

86.    Assignment to the Oakland Division of the United States District Court for the Northern District of California is proper under 28 U.S.C. § 1446(a) because the state court action was filed and is pending in the County of Alameda.

**IX.** **CONCLUSION**

87.    Based on the foregoing, Defendants respectfully request that this action proceed in this Court as an action properly removed.

17

**DEFENDANTS' NOTICE OF REMOVAL BASED ON DIVERSITY JURISDICTION**

51140267.4

1

2    Dated: March 5, 2024              Respectfully submitted,

3
                                      By:___/s/ Matthew S. Disbrow_____
4                                     HONIGMAN LLP
                                      MATTHEW S. DISBROW (SBN 294764)
5                                     2290 First National Building
                                      Detroit, Michigan 48226
6                                     Telephone:    313-465-7000
                                      Facsimile:    313-465-7373
7                                     mdisbrow@honigman.com

8
                                      Attorneys for Defendants
9                                     TRISTRUX LLC and LEONE ELECTRIC COMPANY LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

**DEFENDANTS' NOTICE OF REMOVAL BASED ON
DIVERSITY JURISDICTION**

51140267.4

## DECLARATION OF SERVICE

1

2        I, Matthew S. Disbrow, declare:

3        I am over the age of eighteen years and not a party to the case. I am employed in the

4    County of Wayne, State of Michigan, where the mailing occurred; and my business address is

5    2290 First National Building, 660 Woodward Avenue, Detroit, Michigan 48226.

6        On March 5, 2024, I caused to be served the following documents as described below:

7    **DEFENDANTS' NOTICE OF REMOVAL BASED ON DIVERSITY**

8    **JURISDICTION**

9        ✓    BY MAIL:  I am "readily familiar" with the firm's practice of collection and

10   processing correspondence for mailing.  Under that practice it would be deposited with the U.S.

11   postal service on that same day with postage thereon fully prepaid at Detroit, Michigan in the

12   ordinary course of business.  I am aware that on motion of the party served, service is presumed

13   invalid of postal cancellation date or postage meter date is more than one day after date of deposit

14   for mailing in affidavit.

15        ☐    BY OVERNIGHT DELIVERY:  I served such envelope or package to be delivered

16   on the same day to an authorized courier or driver authorized by the overnight service carrier to

17   receive documents, in an envelope or package designated by the overnight service carrier.

18        ☐    BY HAND DELIVERY:  I caused such envelope(s) to be delivered by hand to the

19   office of the addressee(s).

20        ✓    BY STATE:  I declare under penalty of perjury under the laws of the State of

21   California that the foregoing is true and correct.

22        ✓    BY FEDERAL:  I declare that I am employed in the office of a member of the bar

23   of this Court at whose direction the service was made.

24

25

26

27

28

19

**DEFENDANTS' NOTICE OF REMOVAL BASED ON
DIVERSITY JURISDICTION**

51140267.4

1      I declare under penalty of perjury under the laws of the United States of America that the

2  foregoing is true and correct.

3                                    By:    /s/ Matthew S. Disbrow
                                    _____
4                                    HONIGMAN LLP
                                    MATTHEW S. DISBROW (State Bar. No. 294764)
5                                    2290 First National Building
                                    Detroit, Michigan 48226
6                                    Telephone:     313-465-7000
                                    Facsimile:      313-465-7373
7                                    mdisbrow@honigman.com

8                                    Attorneys for Defendants TRISTRUX LLC and LEONE
                                    ELECTRIC COMPANY LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' NOTICE OF REMOVAL BASED ON
DIVERSITY JURISDICTION**

51140267.4

1

## SERVICE LIST

2

**BARVIE LAW, APC**

3

**Nicole Barvie, Esq. (SBN 282352)**
550 West B Street, 4th Floor

4

San Diego, CA 92101-3598
Telephone: 858.255.0928

5

Facsimile: 858.357.8592

6

Attorneys for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' NOTICE OF REMOVAL BASED ON
DIVERSITY JURISDICTION**

51140267.4